# Exhibit A

**RILEY SAFER HOLMES & CANCILA LLP**
A limited liability partnership formed in the State of Illinois
~~Sandra L. Musumeci (smusumeci~~Brian J. Neff (bneff@rshc-law.com)
136 Madison Avenue, 6th Floor
New York, New York 10016
(212) 660-1000

Louis A. Klapp (lklapp@rshc-law.com)
Edgar Matias (ematias@ rshc-law.com)
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
(312) 471-8700

*Attorneys for Plaintiff Thermos L.L.C.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THERMOS L.L.C., <br><br> Plaintiff, <br><br> v. <br><br> HOGG OUTFITTERS, LLC <br><br> Defendant. | Civil Action No. 2:22-cv-~~6399~~06399 <br><br> **FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT** <br><br> **Jury Trial Demanded** |

Thermos L.L.C. ("Thermos"), by and through its attorneys, and for its First Amended Complaint against Hogg Outfitters, LLC ("Hogg") alleges as follows:

### NATURE OF THE ACTION

1. This is a civil action for patent infringement based upon the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

2. Thermos brings this action to stop, and seek compensation for damages caused by, Hogg's willful infringement of Thermos's U.S. Patent Nos. 8,550,269 and D675,060.

1

## PARTIES, JURISDICTION, AND VENUE

3. Thermos is a Delaware limited liability company with its principal place of business at 475 N. Martingale Road, Suite 1100, Schaumburg, Illinois 60173.

4. On information and belief, Hogg is a New Jersey limited liability company with its principal place of business at 100 Northfield Avenue, Edison, New Jersey 08837.

5. The Court has subject matter jurisdiction over Thermos's claims arising under the United States Patent Act, Title 35, including 35 U.S.C. § 271, pursuant to 28 U.S.C. § 1331 and 1338(a).

6. The Court has personal jurisdiction over Hogg at least because Hogg is organized and exists under the laws of New Jersey and has its principal place of business in New Jersey.

7. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1400(b) because Hogg is organized under the laws of New Jersey and, additionally, because Hogg has a regular and established place of business in New Jersey where it infringed Thermos's U.S. Patent Nos. 8,550,269 and D675,060.

## FACTUAL ALLEGATIONS

### Thermos, Its Products, and the Asserted ~~Products~~Patents

8. Thermos owns the iconic THERMOS brand, and it develops, markets, and sells innovative food and beverage containers under that brand and others.

9. For over a century, consumers have relied on THERMOS® products, from the original vacuum insulated beverage containers that came to market in 1904 to the ubiquitous FUNtainer® beverage containers used by children throughout the United States today.

10. Thermos is among the top three sellers of vacuum insulated food and beverage containers in the United States. Its products can be found in virtually all major mass-market retailers, drug stores, and department stores (including online and physical locations).

11. Thermos is—and is known as—a developer of high-quality, innovative products. Thermos's food and beverage containers meet Thermos's own rigorous quality requirements and the highest standards for national retailers. Thermos regularly develops new products and improvements to its existing products, and it has been awarded over 280 United States patents in the last 20 years alone.

12. Generations of children have relied on THERMOS beverage containers, including those within their lunch boxes. More recently, Thermos developed lines of stand-alone beverage containers for children sold under the Thermos FUNtainer and Thermos Kids brands. One such Thermos FUNtainer beverage container is shown below:



13. Thermos's children's products are well-known and well-liked among the consuming public, with millions of products sold each year across the United States. FUNtainer products have been recognized as among the best water bottles for children.

14. Numerous Thermos products practiced or practice one or more claims of Thermos's U.S. Patent Nos. 8,550,269 ("the '269 Patent") or D675,060 ("the '060 Patent") (collectively, the

"Asserted Patents"). The '269 Patent and '060 Patent are attached as Exhibit 1 and Exhibit 2, respectively.

15. Thermos is the assignee of the entire right, title, and interest in the Asserted Patents. Thermos has the right to sue and recover for past, present, and future infringement of the Asserted Patents.

16. The '269 Patent was duly and legally issued on October 8, 2013, and is titled "Drink Bottle and Lid with Cover for Drink Spout." Figures 1 and 4 of the '269 Patent are reproduced below:



17. The '269 Patent claims, among other things, a drink bottle and lid comprising a bottle having a mouth with a lid engaging structure and a removable lid having a cooperating engaging structure. The removable lid includes an inner lid and an outer lid, where the inner lid includes the cooperating engaging structure and a first hinge portion. Further, the inner lid defines a button tunnel and a spout opening, and the button tunnel includes an enclosing structure defining an enclosed channel to slidably receive a sliding element. The outer lid includes a second hinge portion for pivoting engagement with the first hinge portion to form a hinge so that the outer lid is pivotable (relative to the inner lid) between an open position and a closed position. Also, a button is mounted within the button tunnel so that it is movable between a locked position and an unlocked

position. The button includes a sliding arm slidably mounted within the channel within the enclosing structure of the inner lid, and the sliding arm is enclosed within the enclosing structure to prevent contact with the sliding arm by a user. The sliding arm undergoes translational movement within the enclosed channel during movement of the button between the locked position and the unlocked position. A locking tab extends from the outer lid and engages the button when the outer lid is in the closed position and the button is in the locked position, and disengages from the button when the button is moved to the unlock position. A drink spout is mounted in the spout opening of the inner lid and extends from the inner lid at a position to permit a user to drink fluid contained within the bottle from the drinking tube when the outer lid is in the open position. The outer lid covers the drink spout when it is in the closed position. Finally, a bail handle is mounted on the outer lid and pivotable between a stowed position and a deployed position.

18. The '060 Patent was duly and legally issued on January 29, 2013, and is titled "Lid for Drink Container." The '060 Patent claims the ornamental design of a lid for a drink container, as shown and described from multiple perspectives in Figures 1–6, reproduced below.



**Hogg's Willful Infringement of the Asserted Patents**

19.     Hogg has infringed at least claims 1–14 of the '269 Patent and claim 1 of the '060 Patent by making, using, selling, offering for sale, and/or importing in the United States the products referred to, advertised, and sold under the name 12 oz. Sippy Cup, and products that are substantially similar to the 12 oz. Sippy Cup and sold under a different name ("Hogg's Sippy Cup").

20.     Hogg's Sippy Cup is a water bottle with a removable lid. The removable lid is composed of two portions, *i.e.*, an inner and outer lid, joined by a hinge. The inner lid engages with the water bottle, houses a spout to allow a user to drink the liquid in the bottle, and houses a button to disengage the outer lid from the inner lid, exposing the spout. Also, a handle is mounted to the upper lid that can be moved from a stowed position to an extended position.

21.     As shown in the claim chart attached as Exhibit 3, Hogg's Sippy Cup meets each and every element of representative ~~claim~~claims 1, 3 and 8 of the '269 Patent, literally or under the doctrine of equivalents.

22.     Further, as shown in Exhibit 4, Hogg's Sippy Cup is the same or substantially the same design as claimed in the '060 Patent. An ordinary observer giving such attention as a purchaser usually gives, would be deceived by the substantial similarity between the designs so as to believe the design of Hogg's Sippy Cup is substantially the same as the design protected by the '060 Patent.

23.     On information and belief, in developing Hogg's Sippy Cup, Hogg or its vendor copied the Thermos FUNtainer products that practice claims of the Asserted Patents.

24.     On information and belief, Hogg intended to exploit Thermos's innovation and inventions for its own gain and to Thermos's detriment.

6

25. On September 13, 2021, Thermos sent Hogg a cease-and-desist letter notifying Hogg that it was infringing the Asserted Patents. Hogg was aware that its sales of Hogg's Sippy Cup infringed the Asserted Patents no later than the date it received such letter from Thermos.

26. On information and belief, Hogg was aware of the Asserted Patents and Hogg's infringement of such patents prior to September 13, 2021, because of the ubiquity of the Thermos FUNtainer and Thermos Kids products that embody one or more claims of the Asserted Patents, that Hogg apparently developed its Sippy Cup by copying the appearance and design of such Thermos products, and because Thermos marked embodying products with the patent numbers of the Asserted Patents in compliance with 35 U.S.C. § 287(a).

27. Consistent with Hogg's knowledge of infringement no later than September 13, 2021, Hogg never identified any Asserted Patent claim element that was not present in the Sippy Cup during the parties' correspondence after Thermos sent Hogg the cease-and-desist letter.

~~27.~~28. Despite knowledge of its infringement of the Asserted Patents no later than September 13, 2021, Hogg continued to sell its Sippy Cup for months thereafter, which constituted willful infringement.

29. After receiving knowledge of infringement of the Asserted Patents no later than September 13, 2021, Hogg could have and should have immediately removed the Sippy Cup from its online stores (including hoggoutfitters.com and thestainlessdepotcompany.com), but it failed to do so. Hogg could have and should have immediately stopped selling the Sippy Cup after receiving knowledge of infringement, but it failed to do so.

30. In response to Thermos's cease-and-desist letter, Hogg told Thermos that it stopped its infringing activity "upon notice." However, this was false, as Hogg continued to offer to sell and sell the Sippy Cup for months after it received the letter and without a license to do so. Hogg's

<u>delay in ceasing its infringing conduct was not caused by logistical issues, but instead was the result of Hogg's intentional plan to sell off its complete inventory of Sippy Cups before it would respect Thermos's legal rights under the Asserted Patents. Hogg knowingly pursued the maximization of its profits despite its knowledge that such activity intentionally infringed the Asserted Patents and caused harm to Thermos.</u>

31. <u>After receiving knowledge of infringement of the Asserted Patents no later than September 13, 2021, Hogg could have and should have immediately alerted its distributor partners that their resales of the Sippy Cup would infringe the Asserted Patents, but Hogg failed to do so. On information and belief, Hogg failed to do so in order to avoid threatening lucrative relationships with its reseller distributors. Through the filing of this Amended Complaint, Hogg's reseller distributors continue to offer the infringing Sippy Cup for sale. Hogg continues to profit from its relationships with such reseller distributors who sold, and continue to sell, infringing Sippy Cups.</u>

~~28.~~<u>32.</u>  Since at least September 13, 2021, Hogg has indirectly infringed claims 1–14 of the '269 Patent and claim 1 of the '060 Patent. Hogg has actively and knowingly induced third parties, such as retailers, distributors, and consumers, to make, use, sell, and/or offer to sell Hogg's Sippy Cup.

~~29.~~<u>33.</u>  On information and belief, Hogg has sold Hogg's Sippy Cup to retailers and distributors with Hogg's knowledge and intent that such retailers and distributors will resell the Sippy Cup to consumers.

~~30.~~<u>34.</u>  On information and belief, Hogg actively encouraged retailers, distributors, and consumers to use, sell, and/or offer to sell Hogg's Sippy Cup by advertising the Sippy Cup on its website.

8

31.35.  Hogg has had knowledge of the Asserted Patents and the Sippy Cups' infringement of the Asserted Patents since at least September 13, 2021.

32.36.  Hogg has knowingly induced infringement by end users and possessed specific intent to encourage the end users' infringement since at least September 13, 2021.

33.37.  Hogg has knowingly contributed to infringement by retailers, distributors, and end users and knew of this infringing use since at least September 13, 2021.

38.    Beginning on at least September 13, 2021, Hogg induced its consumers' direct infringement involving the Sippy Cup. For example, Hogg sold Sippy Cups directly to end user consumers via its online store at hoggoutfitters.com. Hogg's end users of the Sippy Cup committed direct infringement by using the Sippy Cup as sold to them by Hogg (e.g., without removing components or otherwise materially altering the product). Hogg specifically intended for its end users to use the Sippy Cup as sold to them, as shown by the information Hogg displayed on hoggoutfitters.com, which showed images of the product for use in its fully assembled form with all components intact. Hogg also told its end user consumers that the Sippy Cup was a tumbler and/or drinkware, was leakproof, had a straw, and was "Easy to use." The foregoing demonstrates that Hogg intended for its end users to use the Sippy Cup. Beginning on at least September 13, 2021, Hogg knew that such use would directly infringe the Asserted Patents because, as of that date, it was on notice that the Sippy Cup practiced one or more claims of each Asserted Patent in view of the cease-and-desist letter sent to Hogg from Thermos. By intending for its consumers to use the Sippy Cup (including by telling them that the product was easy to use) at a time that Hogg knew such use would infringe (including via the cease-and-desist correspondence with Thermos), Hogg intended for the consumers to infringe. Additionally, Hogg's act of selling a product that infringes as sold—such as Hogg's sales of the Sippy Cup—is itself an act of inducement, as Hogg

9

was aware that consumers would use the product as sold to them unless Hogg provided instructions to the contrary, which Hogg intentionally did not do. Hogg therefore actively induced its end user consumers' infringement of the Asserted Patents beginning no later than September 13, 2021, in violation of 35 U.S.C. § 271(b).

39. As another example of Hogg's induced infringement, Hogg sold Sippy Cups to distributor customers, including via its online store at thestainlessdepotcompany.com. Hogg marketed thestainlessdepotcompany.com to businesses that purchased products, applied graphics to the surfaces of such products, and resold the products to end users. The distributors' sales of Sippy Cups were acts of direct infringement, and Hogg induced such infringement by encouraging them to resell the Sippy Cups as sold to them by Hogg (e.g., without removing components or otherwise materially altering the product other than applying graphics to the surface of the Sippy Cup). For example, after receiving notice of infringement, Hogg provided "Wrap Templates" to its distributor customers, which made it possible for the distributors to create and apply the custom graphics that drove the distributors resale businesses. Hogg told its distributor customers that they are part of Hogg's "family" and that Hogg "look[s] forward to working with you and helping your business grow alongside ours." Hogg explains that sales made through thestainlessdepotcompany.com are part of its "wholesale" business, and it intends to sell its products to other businesses for the purpose of resale. Consistent with Hogg's intent for distributors to resell the products, Hogg sold Sippy Cups to distributors by the case or in other large quantities. The foregoing demonstrates that Hogg intended for its distributor customers to resell the Sippy Cup. Beginning on at least September 13, 2021, Hogg knew that such sales would directly infringe the Asserted Patents because, as of that date, it was on notice that the Sippy Cup practiced one or more claims of each Asserted Patent in view of the cease-and-desist letter sent to

Hogg from Thermos. By intending for its distributors to resell the Sippy Cup (including by encouraging the resale of the products) at a time that Hogg knew such sales would infringe (including via the cease-and-desist correspondence with Thermos), Hogg intended for the distributors to infringe. Additionally, Hogg's act of selling a product that infringes as sold—such as Hogg's sales of the Sippy Cup—is itself an act of inducement, as Hogg's distributors would resell the product as sold to them unless Hogg provided instructions to the contrary, which Hogg intentionally did not do. Hogg therefore actively induced its distributors' infringement of the Asserted Patents beginning no later than September 13, 2021, in violation of 35 U.S.C. § 271(b).

40.   Beginning on at least September 13, 2021, Hogg contributed to its consumers' direct infringement involving the Sippy Cup. Hogg sells a variety of products, including products comprising a bottle portion and a lid portion, and it also sells replacement parts for at least some such products, including replacement lids. The Sippy Cup has a bottle portion and a lid portion, wherein the lid portion screws onto the bottle portion. Hogg sold to consumers its Sippy Cups and, on information and belief, replacement parts for Sippy Cups including replacement lids. Each Sippy Cup lid portion had no purpose other than to be attached to a Sippy Cup bottle portion and to enable use of the assembled Sippy Cup. Hogg's website shows that lids are to be used with bottles, and it provides instructions as to which bottles each lid should be used on. As show in in Exhibits 3 and 4, the Sippy Cup lid portion is a material part of the inventions claimed in the Asserted Patents. Hogg has known that Sippy Cup lid portions were especially made or adapted for use in an infringement of the Asserted Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use, since at least September 13, 2021, when the cease-and-desist letter sent to Hogg from Thermos alerted Hogg to infringement by the Sippy Cup's lid portion and/or combination of its lid potion with its bottle portion. Hogg therefore

contributed to its consumers' infringement of the Asserted Patents beginning no later than September 13, 2021, in violation of 35 U.S.C. § 271(c).

~~34.~~41.  Hogg's infringement has been knowing, intentional, and willful since at least September 13, 2021.

## COUNT I
### (Infringement of the '269 Patent)

~~35.~~42.  Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through ~~33~~41.

~~36.~~43.  Hogg has been or is infringing the '269 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, Hogg's Sippy Cup in violation of 35 U.S.C. § 271(a).

~~37.~~44.  Hogg has been or is inducing infringement of the '269 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Hogg's Sippy Cup in violation of 35 U.S.C. § 271(b).

~~38.~~45.   Hogg has been or is contributing to the infringement of the '269 Patent by selling or offering to sell Hogg's Sippy Cup, knowing it to be especially made or especially adapted for practicing an invention of the '269 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

~~39.~~46.  Hogg's infringement of the '269 Patent has been, and continues to be knowing, intentional, and willful.

~~40.~~47.  Hogg's infringement of the '269 Patent has caused and will continue to cause Thermos damages for which Thermos is entitled to compensation pursuant to 35 U.S.C. §§ 284 or 289.  Hogg's knowing, intentional, and willful infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 284.

41.48.  Hogg's infringement of the '269 Patent has caused and will continue to cause Thermos immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Thermos has no adequate remedy at law.

42.49.  This case is exceptional, and Thermos is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

**COUNT II**
**(Infringement of the '060 Patent)**

43.50.  Thermos incorporates by reference, as if fully set forth herein, each of the allegations set forth in paragraphs 1 through 41 49.

44.51.  Hogg has been or is infringing the '060 Patent by making, using, selling, or offering for sale in the United States, or importing into the United States, including within this judicial district, Hogg's Sippy Cup in violation of 35 U.S.C. § 271(a).

45.52.  Hogg has been or is inducing infringement of the '060 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Hogg's Sippy Cup in violation of 35 U.S.C. § 271(b).

46.53.   Hogg has been or is contributing to the infringement of the '060 Patent by selling or offering to sell Hogg's Sippy Cup, knowing it to be especially made or especially adapted for practicing an invention of the '060 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

47.54.  Hogg's infringement of the '060 Patent has been, and continues to be knowing, intentional, and willful.

48.55.  Hogg's infringement of the of the '060 Patent has caused and will continue to cause Thermos damages for which Thermos is entitled to compensation pursuant to 35 U.S.C. § 284.

Hogg's knowing, intentional, and willful infringement justifies an increase of up to three times the damages to be assessed pursuant to 35 U.S.C. § 284.

49.56.  Hogg's infringement of the '060 Patent has caused and will continue to cause Thermos immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Thermos has no adequate remedy at law.

50.57.  This case is exceptional, and Thermos is entitled to an award of attorney fees pursuant to 35 U.S.C. § 285.

## PRAYER FOR RELIEF

WHEREFORE, Thermos respectfully requests the following relief:

1. Entry of judgement in Thermos's favor and against Hogg on all claims for relief alleged herein;

2. Preliminarily and permanently enjoining Hogg, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the Asserted Patents;

3. Ordering Hogg to pay damages in an amount to be further proven at trial, for its infringement of the Asserted Patents;

4. Ordering that the damages award be trebled;

5. Declaring that this is an exceptional case under 35 U.S.C. § 285;

6. Ordering Hogg to pay prejudgment interest, attorneys' fees, and costs;

7. Awarding such other and further relief as the Court may deem to be just and proper.

## DEMAND FOR JURY TRIAL

Thermos hereby demands a trial by jury on all issues so triable.

Dated: ~~November 1, 2022~~January 3, 2023    Respectfully Submitted,

/s/ ~~Sandra L. Musumeci~~Brian J. Neff
~~Sandra L. Musumeci~~Brian J. Neff (NJ Bar No. ~~030972000~~056591993)
RILEY SAFER HOLMES & CANCILA LLP
136 Madison Avenue, 6th Floor
New York, NY 10016
Telephone: (212) 660-1000
Fax: (212) 660-1001
~~smusumeci~~bneff@rshc-law.com

Louis A. Klapp (*pro hac vice* ~~motion forthcoming~~)
Edgar Matias (*pro hac vice* ~~motion forthcoming~~)
RILEY SAFER HOLMES & CANCILA LLP
70 ~~W.~~West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone: (312) 471-8700
Fax: (312) 471-8701
lklapp@rshc-law.com
ematias@ rshc-law.com

*Attorneys for Plaintiff Thermos L.L.C.*

15

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

Pursuant to Local Rule 11.2, counsel for Plaintiff hereby certifies, to the best of ~~her~~his knowledge, that this matter in controversy is not the subject of any other action currently pending in any court, or of any pending arbitration or administrative proceedings.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

RILEY SAFER HOLMES & CANCILA LLP

*Attorneys for Plaintiff Thermos~,~ L.L.C.*

By: \_\_\_/s/ ~~Sandra L. Musumeci~~Brian J. Neff\_\_
       ~~Sandra L. Musumeci~~

Brian J. Neff

Dated: ~~November 1, 2022~~January 3, 2023

4860-1122-5139, v. 7